## No. 7777.

### Anna S. Miller vs. M. Georgia Miller et al.

Nullities of form in the probate of a will are barred by the prescription of five years.
One who has made a last will may, by a subsequent will, appoint an executor, and although the will last written contains no other provision than the appointment of an executor, the objection that it is not dispositive is untenable.

APPEAL from the Thirteenth Judicial District Court, parish of Concordia. *Hough*, J.

George S. Sawyer for plaintiff and appellant :

Plaintiff contends that the sale of certain real estate made by order of the probate court, in the succession of her late husband, at the instance of the testamentary executor, is null and void for the following reasons :

First. The will itself, a nuncupative one by private act, was null and void, because it does not appear by whom, or where, or in whose presence it was read at the time of making the same. Prescription of five years does not apply. C. C. 1582; 5 Rob. 481; 6 An. 242; 1 Rob. 48 ; 2 An. 926.

Second. The will was ordered to be executed on the proof of the depositions of but two witnesses, without accounting for the absence of others, or showing the impossibility of having more. C. P. 933, 943 ; C. C. 1648 ; C. C. 12 ; 1 Rob. 48 ; 2 An. 726 ; 6 An. 246 ; 10 An. 212 ; 5 Rob. 483 ; 6 An. 104 ; 5 An. 265 ; 17 An. 189.

Third. The olographic memorandum in which the deceased named the executor, is not a testament, and contains no testamentary disposi-

tion.   29 An. Succession of Elliot; 28 An. 697; 29 An. 560; C. C. article 1570, 1571.

Fourth.   The pretended sale was a scheme of collusion and fraud between the executor and the purchaser.

O. Mayo for defendants and appellees:

The will was signed by the testator and requisite number of witnesses. On its face it appears to be legal and valid.   All the formalities of the law were also observed in the probating of it.

Besides, the action to annul a will is barred by the prescription of five years, which has been pleaded.

The administrative acts of the executor, even if illegally appointed and qualified, must be held valid until the appointment is revoked, for the security of third persons.   30 An. 168 ; 28 An. 806.

The appointment of an executor in a subsequent olographic codicil is clearly legal.

The charge of collusion is perfectly groundless.   The property was sold for its full value, and no injury done to the succession.

The opinion of the court was delivered by

WHITE, J.   This is a petitory action to recover a plantation in the parish of Concordia.   Before stating the prayer of the petition, it will be well to state briefly the facts on which the cause of action is based, in order to a clear apprehension of the issues presented for decision: David F. Miller was twice married, his second wife being the plaintiff in this suit.   In 1856, during the existence of the second marriage, John A. Miller sold to Anna S. Miller, wife of David F. Miller, the land in controversy ; the price of the sale was $38,638 14, all on credit, and evidenced by six notes of David F. Miller, drawn to the order of John A. Miller, and falling due in 1857, 1858, 1859, 1860, 1861, and 1862, all secured by special mortgage on the property sold.   David F. Miller died in 1862 ; he left the following children, the issue of his first marriage : W. T., Eliza L., wife of W. B. Ulrich, Mary H., and Julia B. Miller, all majors, and David D. and Henry W. Miller, minors, as also three minor children, the issue of his second marriage.   On the 29th September, 1862, W. B. Ulrich, the son-in-law of the deceased, applied for the probate of his will, which was ordered and granted, and on the same day a decree of probate was duly entered, and letters testamentary were issued to Ulrich, who was named as such in the will.   An inventory was taken, in which was included the property above mentioned as having been acquired from John A. Miller.   Ulrich, the qualified executor, as far as the record discloses, filed no account of his gestion ; various judgments were rendered against him as executor, amounting in principal alone to nearly twenty-five thousand dollars, some of them containing recognition of

special mortgages. In 1872, William S. Miller, who had been named co-testamentary executor of his father's will, applied for letters, which upon his qualification were issued; he obtained an order for and had taken a new inventory, and shortly after, on his petition representing that there were debts to be paid, obtained an order of sale. Under this order, after due advertisement, the property now in question was adjudicated to John A. Miller for the appraised value, $25,627.52. The executor filed his final, account, which stated the privileged debts at $5851.69, and the other debts, mortgage and ordinary, at a sum which largely exceeded the action, leaving the succession hopelessly insolvent. The price paid by the purchaser of the real estate was called upon to contribute to the payment of the privileges to the extent of $3210.51, thus leaving the sum $22,417.01 to be applied to the debts, which were, as stated in the account, first, a stock mortgage of the Citizens' Bank, subject to which the plantation was sold; second, the vendor's mortgage in favor of the purchaser, J. A. Miller, stated in the account as then amounting to $39,603.20; third, various judgment creditors, some with recognition of special mortgage, amounting to, exclusive of interest, the sum of $25,151.02. Thus the result was that Miller, the purchaser, contributed to the payment of the privileges the sum of $3210.51, retained the balance of his bid, $22,417.01, in partial satisfaction of his claim of $39,603.20, and the other mortgage and ordinary creditors got nothing. The account was, after due proceedings, homologated, these being the proceedings upon which the defendant's title rests, she having acquired through the succession of her father, J. A. Miller.

The claim of plaintiff is :

First. That the property never belonged to the succession of her husband, having been acquired by her; that although the price was paid by the notes of the husband, these notes represented the giving to her in payment by her husband of a sum of money due by him in consequence of the receipt of her paraphernal property.

Second. That the will was never duly probated, the witnesses not testifying to such facts as authorized the probate, and only two witnesses having been heard, when three were required by law.

Third. That the appointment of Miller as executor was an absolute nullity, as he was appointed under a so-called codicil, which was absolutely null, not being dispositive in its nature.

Fourth. That all the proceedings in the succession of Miller were fraudulent and collusive, and were concocted between John A. Miller and the executor, with the object of divesting the succession of its title without consideration.

We will pass on the grounds in detail.

1. The property was acquired during community; the presumption that it was community obtained. C. C. Besides, on the face of the sale the price was to be paid by the husband. No proof whatever is in the record substantiating the pretensions of the plaintiff as to the price having been intended to re-imburse her paraphernal claims. On the contrary, the proof is the other way.

, 2. The will probated was in the nuncupative form by private act; the two subscribing witnesses, whose testimony was made the basis of the probate, testified as follows : one, " that he had carefully examined the instrument presented purporting to be the last will of David Franklin Miller ; that he recognizes it as having been signed .by said Miller, as for his last will in the presence of deponent and the other subscribing witnesses on the day of its date, and that the said Miller presented it to the witnesses, declaring it to be his last will and testament ; that deponents and the other subscribing witnesses, at the request of said Miller, and in his presence, and the presence of each other, signed the same as witnesses ; that all of said witnesses were at the time residents of this parish ; that Phelps and Hamberlin are now absent from the State. The other witness testified that he has carefully examined the instrument purporting to be the last will of David Franklin Miller ; that he recognizes the same as having been written by deponent under the dictation of said Miller ; that said Miller presented the same to the subscribing witnesses, declaring it to be his last will and testament, and signed the same in the presence of deponent and the other subscribing witnesses, and that deponent and the other subscribing witnesses, at the request of said Miller and in his presence, and in the presence of each other, signed the same as witnesses ; that all of the subscribing witnesses were residents of this parish, and that Phelps, Hamberlin, and Welch, as deponent is informed and believes, are now absent from the State.

The grounds upon which it is said that the testimony was insufficient to justify the probate are, first, that only two witnesses testified ; second, that the proof did not show that the will was read to the testator in the presence of the witnesses.

First. The absence of the three other subscribing witnesses was sworn to, and such absence justifies the probate on the testimony of less than three witnesses. C. C. 1653. True, in the case now before us there is testimony going to show that one of the witnesses sworn to as absent was really present in the State. The proof is not certain, but if it were, the fact would not render the probate absolutely null.

Second. There can be no doubt that the reading of the nuncupative will by private act is necessary to its validity ; but C. C. 1649, in pointing out what proof is required to probate such a will, does not enumerate

proof that the will was read. Whether or not this singular divergence between what is required for the validity of the will and the quantum of proof required for the probate renders null a probate made according to the requisites of C. C. 1649, is a question we need not consider, because we think the plaintiff's case, in so far as it attacks for nullity of form, is barred by the prescription of five years, which has been pleaded. C. C. 3540 ; Calais vs. Sembre, 10 A. 684. True, wills are solemn acts, and form is of the essence, the aphorism being *forma dat esse rei*, and therefore, a will not formal is absolutely null. But as said in Calais vs. Sembre, there is a distinction between absolute nullities resulting from defect of form and those flowing from other causes, as said by this court in Vaughan et al. vs. Christine, 3 A. 328, in speaking of a case where form was of the essence of the thing attacked, where it was contended that form being of the essence, the nullity was, therefore, absolute: "Such is and has ever been the law ; but counsel overlook the distinction that there are absolute nullities of different kinds, and that all absolute nullities arising from defect of form come within the general provisions of article 3507," now article 3540.

Third. We think it only needs statement to maintain the proposition that one who has made a last will may by a subsequent will clothed with the legal formalities appoint a testamentary executor. The last will was in the olographic form, and was duly probated. It is contended, however, that this last will refers to the appointment of an executor to some other than the will to which we have previously referred. This claim results from the following : The will last in date, which is called a codicil, says, " I hereby add this as a codicil to this my last will and testament, the said will having been dated on the 14th day of March, last past." * * * * The will referred to is dated the 14th day of March, but the word fourteenth, which in the original will is written in letters, appears to have been incorrectly spelled, and has been altered. It is claimed that the word was originally the twentieth, and therefore the appointment of the executor refers to another will than the one probated. The original will is annexed to the transcript, and we are entirely satisfied that the word, as originally written, was the word fourteenth, which has been simply corrected as to spelling. The codicil, as found in the record, is attached to the will, and in it the testator speaks of it as " *this my will.*"

Fourth. We find no proof whatever of the charges of fraud. It is said that the claim of the first mortgage creditor was prescribed. We know not whether such was the case, but it is manifest that the claim was allowed by the executor on his account, and although so allowing it cut all the other creditors off in the distribution, no one seems to have charged or pretended that the claim was barred by pre-

scription. In fact, striking the claim from the account, the judgment creditors of the succession would remain unpaid. The succession was insolvent, as we have already shown, by a large amount, irrespective of the claims of the first mortgage creditor.

The judgment below is affirmed with costs.

Mr. Justice SPENCER recuses himself in this case.

Rehearing refused.