No. 57,298

In the Matter of the Estate of CARL C. ADAMS, deceased.

(701 P.2d 965)

Opinion filed June 21, 1985.

*David L. Patton,* of Patton & Kerbs, of Dodge City, argued the cause, and *Walter F. Stueckemann,* of Jetmore, was with him on the briefs for appellant.

*Rae E. Batt,* of Kinsley, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: This is an appeal from an order denying the appointment of the executor named in the will of Carl C. Adams.

Carl C. Adams died testate on February 18, 1984. Adams was unmarried without issue. He willed all his property, consisting of $270,000 worth of real estate and $230,000 cash and personal property, to Lyle Cecil Salmans and Mabel Grace Miller, his nephew and niece.

Walter F. Stueckemann, Adams' attorney and scrivener of the will, is named executor in the will. Mr. Salmans and Mrs. Miller asked Mr. Stueckemann to be co-administrators of the estate. Mr. Stueckemann refused their request.

Stueckemann petitioned for probate of the will. The beneficiaries answered denying Stueckemann was a suitable or competent person to be executor and requested they be appointed co-administrators instead. The district magistrate judge admitted the will to probate but refused to follow the provisions of Adams' will and found Stueckemann unsuitable to be executor and appointed Salmans and Miller co-administrators c.t.a. Stueckemann appealed the order to the district judge. R.L. Crabill, President of the Farmers State Bank in Jetmore, was appointed

special administrator pending resolution of the appeal. The district judge affirmed the magistrate's order. The Court of Appeals affirmed the district court. This appeal followed.

The sole issue on appeal is whether the district court abused its discretion in refusing to appoint the person named in Carl C. Adams' will as executor.

The general rule regarding appointment of a named executor is stated in K.S.A. 59-701:

"Letters testamentary shall be granted to the executor, if any is named in the will, if he or she is legally competent and shall accept the trust."

The mandatory statute has been tempered by this court's construction. In *In re Estate of Grattan,* 155 Kan. 839, 853, 130 P.2d 580 (1942), we held that normally the court must appoint the executor named in the testator's will without exercising any discretion if the person named is legally competent and will accept the trust. We went on to state that a district court should refuse to appoint a designated executor only where peculiar and abnormal facts are disclosed which make it clear the designated person is unsuitable for the position of trust.

Our latest statement on this issue is *In re Estate of Petty,* 227 Kan. 697, 707, 608 P.2d 987 (1980), where we stated:

"We approve the rule stated in *Grattan* that when a testator in his will names an executor, *normally* the court has no discretion respecting the appointment, if the executor so named is legally competent and will accept the trust. However, as stated in *Grattan,* a district court should refuse to appoint a designated executor where peculiar and abnormal facts are disclosed which make it clear that a person designated as an executor is not a suitable person. If the evidence is clear that a person designated is not a suitable person to serve as executor, then he should not be appointed and the administration of the estate should be undertaken by a special administrator.

"We wish to make it clear that the mere fact the heirs of the testator have a feeling of hostility toward the designated executor and do not want him appointed is not alone a sufficient reason for a district court to refuse to appoint the designated person."

A person's right to make a testamentary disposition of his property is of the same nature as the right to own property. Thompson on Wills § 17 (3rd ed. 1947). Included in that right of testamentary disposition is the testator's right to designate the fiduciary whom he chooses to execute his estate. See *In re Estate of Grattan,* 155 Kan. at 850.

This is an important right and is so recognized in the law. In

fact it is generally held that the disposition of property is not an essential characteristic of a will but that a valid will may be made for the sole purpose of naming an executor. See Thompson on Wills § 11, citing *Conoway v. Fulmer,* 172 Ala. 283, 54 So. 624 (1911); *Dixon v. Dameron's Administrator,* 256 Ky. 722, 77 S.W.2d 6 (1934); *Miller v. Miller et al.,* 32 La. Ann. 437 (1880); *Stewart v. Stewart,* 177 Mass. 493, 59 N.E. 116 (1901); *Reeves v. Duke,* 192 Okla. 519, 137 P.2d 897 (1943).

As the foregoing citations illustrate, the rule is that the testator's choice of executor shall control, except in cases of legal incompetence or where there are peculiar and abnormal circumstances showing the executor nominated in the will is unsuitable for the position of trust. We hold the term unsuitable means the nominee's conduct is so improper it would justify removal if the appointment were made.

In this case Walter Stueckemann was Carl Adams' family lawyer. Stueckemann had been doing legal work for Adams for approximately 25 years. The relationship was more than that of attorney and client; it was also a personal friendship. Stueckemann visited Adams when he was in the hospital, carried the mail to him, had his glasses fixed, and ran other errands. Adams trusted Stueckemann. Carl Adams' will was executed in 1965. He named his sister, Irene Adams, as the executor and, in the alternative, Walter Stueckemann. Irene predeceased Carl Adams, leaving Stueckemann as the designated executor. Adams had possession of his will. He chose to make no changes after the death of his sister, thus leaving Walter Stueckemann as the executor. The will was not contested, hence we conclude Carl Adams was neither incompetent nor unduly influenced in making his testamentary dispositions, including the appointment of an executor.

The heirs under the will argue Walter Stueckemann is unsuitable to be executor because he refused to agree to disregard the terms of Adams' will and make them co-administrators. They also complain that Mr. Stueckemann would not advise them when their property would be assigned and delivered to them. They also complain that Stueckemann told them he was going to sell the house.

It should be remembered the only contacts the heirs had with Stueckemann were prior to the funeral and in his office the day

the will was read. At both times there had yet been no inventory or appraisal of Carl's estate. Stueckemann had not studied the will since he had drafted it in 1965. He had no idea of the number of demands against the estate which might be filed. When inquiry was made of him by the heirs about the timing of distribution and the valuation of the property, Stueckemann was not definite because he was not in a position to be so. The heirs' inquiry was premature. Much is made of Stueckemann's statement that Carl's personal property would have to be sold. Stueckemann explains he meant if the heirs could not agree on division of the personal property, it would have to be sold.

Appellees argue Stueckemann refused to draft a power of attorney for Carl Adams giving R. L. Crabill authority to manage Adams' affairs if he became disabled. It is argued this evidence indicates Stueckemann was reluctant to share his control over Adams' property. The evidence falls short of its purpose for two reasons. First, a power of attorney ends with the life of the grantor. It, therefore, does not conflict with being executor of the estate. Second, Stueckemann testified the instrument was drafted and ready for execution but Adams didn't feel that he needed it at the time and never did sign it.

Appellees also argue Mr. Stueckemann is an unsuitable executor because he would cause the estate extra expense. Stueckemann advised the heirs he would charge the estate one and one half percent as an executor's fee and that he would hire his associate as attorney, who would charge three percent as attorney fees.

Appellees testified their attorney, Rae Batt, had quoted them an attorney fee of three percent. Thus the executor's fee is the issue upon which appellees rely to render Stueckemann unsuitable to be the executor of Carl Adams' estate.

The trial court made the following statement at the end of the trial:

"[T]he real issue we're talking about here is the attorney fees regarding this. I see that Mr. Stueckemann for the attorney wants three percent [and] for the executor a percent and a half, where Mr. Batt to do it is going to do it on a three percent basis. Somewhere in the record I read that those were the usual terms that have been used out in this country for a long time. What we're really talking about here is the amount of money that it costs to probate an estate."

Appellant objected that this was not the issue. The court continued:

"I understand you don't feel that that's the issue, I understand that, but I've only been called upon to rule on the allowance of attorney fees in an estate in one case and that was up in Hays and in that case I had the attorneys come in with their time records on how much time they actually spent and it doesn't come anywhere near, at their usual office rate, and in this instance it was $50.00 an hour. For the time that the attorney spent on the estate at $50.00 dollars an hour it doesn't work out to anywhere being one percent. And that's what I was wondering, just for my own purposes, you know, a ball park figure of what this estate is worth and we're talking about $500,000.00. That doesn't make any difference in who the attorney is or the executor that does this estate. The bottom line is how much is the Court going to be requested to allow in fees. In nine years I have never had any one of the magistrate judges come to me talking about fees in probate cases. I have talked to the magistrate judges in this district and they simply allow what the attorney comes in and says should be allowed . . . ."

Preliminary to affirming the magistrate judge's order finding Stueckemann unsuitable to be executor, the district judge made this written finding:

"It is obvious from the record that the niece and nephew are adults of reasonable intelligence. It is also obvious that the attorney will manage the estate to obtain a maximum valuation which will end up benefiting the attorney and not necessarily the heirs. It is also obvious that the attorney will not tolerate a lot of interference from the heirs without raising his fee.

"Carl Adams' estate is simple. There is ample cash to pay any debts; there are no lost heirs; all the personal and real property is in Kansas; the estate has no unusual property; all property goes to an agreeable brother and sister. A good legal secretary could probate this estate without any hassle. Mr. Stueckemann will want about $45,000 to do the job.

"This case should never have come this far. An attorney should attempt to compromise to avoid litigation and expense. Mr. Stueckemann has made no compromise and he has promoted litigation and expense. Mr. Stueckemann has 'acted in a manner antagonistic toward the interests of the estate or the heirs . . . .' "

The trial court misconstrued the issue. The matter of attorney fees and executor fees were not the issue. In addition, there is no evidence to support the statement that Mr. Stueckemann would want $45,000 to do this work. Should an unreasonable fee be submitted, it is subject to court approval.

The issue is whether Walter Stueckemann acted in a manner so antagonistic to the interest of the estate and the intentions of the testator as to constitute peculiar and abnormal facts sufficient to warrant the court in ignoring the testator's nomination for executor. We have searched the record carefully and find no such evidence. A laborer is worthy of his hire. Stueckemann is entitled to be paid the reasonable value of his services. The fact

Stueckemann indicated he estimated his fee as executor would be one and a half percent and his associate's attorney fee three percent of the gross estate does not indicate any antagonism to either the estate or the heirs any more than Mr. Batt's indicating his attorney fee would be three percent of the estate. This case does not rise to the level of the rule enunciated in *Petty*. There the named executor ignored the law, enlarged on his role and evidenced a total disregard for the interests of the estate and the heirs. If appointed, his actions would have justified court removal. Here there was no such misconduct. Under the circumstances of this case, the testator's nomination should be respected.

The judgment of the trial court is reversed and this case remanded for further proceedings consistent with this opinion.