NOT DESIGNATED FOR PUBLICATION

No. 122,842

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
BARBARA B. JAMES.

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Opinion filed October 15, 2021. Affirmed and remanded.

*Rhonda K. Levinson* and *Hale Weirick*, of Perry and Trent, L.L.C., of Bonner Springs, and *Marion L. Stern* and *Adam C. Mauck*, of Stockton & Stern, LLC, of Gardner, for appellant Thomas James.

*Calvin J. Karlin* and *Catherine C. Theisen*, of Barber Emerson, L.C., of Lawrence, for appellee Katherine James.

Before WARNER, P.J., CLINE, J., and WALKER, S.J.

PER CURIAM: This case involves a dispute over the administration and distribution of the estate of Barbara James. After Barbara's death, her two children—Thomas and Katherine—filed separate petitions to probate two different wills Barbara had purportedly executed. Katherine relied on a will from 2015, while Thomas produced a will from 1998. Thomas argued that the 2015 will should not be enforced because it was the product of undue influence by Katherine and Barbara lacked capacity to execute it.

After contentious litigation and evidentiary hearings, the district court admitted the 2015 will to probate and appointed Katherine as executor of the estate. Thomas appeals,

raising a variety of claims regarding the court's rulings and its handling of the proceedings. After carefully reviewing the record before us and the parties' arguments, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Barbara James died on May 28, 2018. She was survived by her children Thomas and Katherine, who filed separate petitions to probate competing wills for their mother:

- Two days after Barbara's death, Thomas filed a petition to admit a will his mother had executed in 1998 and to appoint himself as executor of her estate. Although Thomas did not have a copy of the will at the time, he noted that Barbara had executed a will that mirrored the terms of her late husband's will, which he included with his petition.

- Several months later, Katherine filed a petition to probate a will that Barbara had executed in 2015 and attached the 2015 will to her petition.

Thomas objected to Katherine's petition, arguing that his mother lacked the capacity to execute the 2015 will and that it was the product of undue influence by Katherine and not a product of Barbara's free will.

The district court held a hearing on Katherine's petition to probate the 2015 will on December 4, 2018. Thomas filed a motion for a continuance because Katherine had not responded or objected to his numerous subpoenas and various other discovery requests. Before ruling on Thomas' motion, the court permitted Katherine to present testimony from the two people who witnessed the 2015 will and the notary who was present. After hearing this limited testimony, the court granted Thomas' continuance and appointed

2

Katherine as Special Administrator of Barbara's estate for the limited purpose of filing any necessary estate tax and income tax returns.

In March 2019, Thomas obtained a copy of Barbara's 1998 will and filed an amended petition to admit it into probate. The 1998 will differed from the 2015 will in several respects. Most notably, the 2015 will was less favorable to both Katherine and Thomas; though Katherine and Thomas would each have received 50% of Barbara's estate under the 1998 will, they would each only receive 30% under the 2015 will. There were also similarities; like Barbara's 2015 will, the 1998 will designated Katherine as the executor. (Thomas acknowledged that both wills included this designation but argued his sister was unsuitable for such a position.)

The evidentiary hearing on Katherine's petition to admit Barbara's 2015 will spanned well over a year, with hearings held on December 4, 2018; October 2-3, 2019; October 9, 2019; and December 16, 2019. The evidence produced during these hearings covered a range of topics, including the drafting and execution of the 2015 will; the involvement of Matthew Hoy, Barbara's attorney and the scrivener of the will; Katherine's relationship with her mother and father; Katherine's alleged involvement in drafting the 2015 will; Barbara's mental capacity; and the discordant relationship between Thomas and Katherine.

The testimony at the evidentiary hearing showed that Barbara decided to draft a new will in 2015 after her husband, John, began suffering from advanced Alzheimer's disease. She was introduced to Hoy, who practices in the area of estate planning and administration, by the attorney who had helped her with John's guardianship and conservatorship proceeding. Barbara soon hired Hoy, and they began to structure an estate plan and draft a will, meeting numerous times over the next four months.

During his testimony, Hoy noted that Katherine had aided Barbara in collecting necessary information and had attended his initial meeting with Barbara. Hoy testified that Barbara was very private about her affairs (especially her finances), and that they met on numerous occasions to discuss her wishes and how best to give effect to them. He described Barbara's estate plan as a pour-over will, whereby a revocable trust was made the beneficiary of the estate and acted as the primary instrument for distributing her assets. Barbara and Hoy chose this structure because Barbara wanted to avoid the probate process. Hoy noted that Barbara understood the property she owned and what was covered by her will, how she wanted it distributed, who her children were, what property she wanted them to receive, and how she wanted them to receive it upon her death. Hoy believed that Barbara was of sound mind and had the requisite capacity to sign the 2015 will. Around this time, Barbara was evaluated by a doctor, who concluded she still possessed sufficient mental acuity to take care of herself and manage her financial affairs.

The 2015 will left Katherine and Thomas identical proportions of the estate, but Barbara structured a different method of distribution for each. Katherine would receive her percentage of the estate outright. Thomas' portion would be held in trust, and he would receive a distribution on quarterly basis. Hoy testified that this structure would "provide an extraordinary amount of regular cash flow to [Thomas], with the remainder then distributed upon his death to charities that Barbara had selected." According to Hoy, Barbara decided to structure Thomas' distributions in this manner because she "was concerned about her son." Barbara also included several other family members who had not been included as beneficiaries in her previous will.

Hoy testified that Barbara elected to appoint Katherine as the executor of her estate (in the event her husband predeceased her) because she trusted her daughter and believed she could rely on her. Barbara chose Hoy as a backup executor.

4

Barbara executed the 2015 will on December 1, 2015. Before Barbara signed the instrument, Hoy discussed its terms with her to make sure they accurately reflected her wishes. Two witnesses and a notary were present during the will-signing ceremony, when Hoy asked a series of questions to ascertain if Barbara appeared to be free from restraint or undue influence and understood the nature of her property and how it would be distributed. Neither Katherine nor Thomas was present when the will was signed.

After hearing the evidence and considering the arguments of the parties over the course of a year, the district court admitted the 2015 will. The court explained its ruling in a thorough and well-articulated memorandum opinion. The court noted that Thomas and Katherine had a "strained relationship devoid of trust or mutual respect. . . . [E]very action by the other is interpreted as suspicious." But it found that Thomas failed to establish either undue influence or Barbara's lack of capacity by clear and convincing evidence. The court observed that although Barbara may have experienced an overall decline in recent years, it had "no real doubt" that she had testamentary capacity when the will was executed. The court also concluded Thomas failed to meet his burden to show that suspicious circumstances attended the drafting of the 2015 will. And it appointed Katherine as executor of the estate.

DISCUSSION

Thomas raises several challenges on appeal, questioning procedural and substantive rulings by the district court.

- Procedurally, Thomas argues that the district court erred when it denied his request for a continuance on the final day of the evidentiary hearing.

- Substantively, Thomas challenges the court's findings regarding Barbara's testamentary capacity to execute the 2015 will and the absence of undue influence.

He also asserts the court erred when it limited questions regarding certain aspects of Hoy's representation on relevance grounds. And he challenges the court's decision to appoint Katherine as executor of Barbara's estate.

Katherine vigorously opposes these arguments and has moved for attorney fees—both for her appeal and for the proceedings before the district court.

THOMAS' CHALLENGES TO THE DISTRICT COURT'S RULINGS

1. *The district court did not abuse its discretion in denying Thomas' request for a continuance.*

Thomas first argues the district court erred when it denied his request for a continuance of the last day of the evidentiary hearing.

Some additional background is necessary to place this argument in context. The evidentiary hearing on whether to admit the 2015 will into probate was originally set for September 13, 2018. A few days before that date, Thomas filed an objection and a petition to maintain the status quo (meaning, to proceed under the 1998 will Thomas had previously provided). The September 2018 hearing was continued to December 4, 2018.

Shortly before the December 4 hearing, Thomas filed a request for a continuance, arguing Katherine had not responded to various subpoenas and requests to produce documents. The court proceeded with the hearing and heard testimony from three of Katherine's witnesses. It then set a timeframe for discovery and ordered that the court would hear additional evidence concerning both wills on April 9, 2019.

At Thomas' request, the court continued the April 9 hearing to April 30, to allow for additional discovery, and later extended the April 30 hearing to October 2-3. In late

6

September, Thomas requested a continuance of the October 2 hearing, claiming discovery was unfinished, but that hearing took place as scheduled.

Katherine concluded her presentation of evidence on October 2. The court then inquired of Thomas as to how long he needed to present his evidence, and he indicated he would conclude by midday on October 3. On the following day, however, Thomas' presentation was limited entirely to the examination of Hoy (Barbara's attorney who drafted the 2015 will and conducted the will-signing ceremony). After Hoy testified, Thomas indicated that as further evidence, he intended to call Katherine and estimated that her testimony would take about two hours. He did not indicate that he personally wished to testify. The court scheduled one further day for a hearing, on October 9.

On October 9, Thomas' attorney began her examination of Katherine. But Thomas became ill during a break, and the hearing ceased. The court continued the remainder of the hearing for December 16, 2019. About a week later, Thomas requested a new subpoena for Hoy (who had already testified twice). Several weeks later, he requested a subpoena for another witness. The witnesses and Katherine objected to the subpoenas.

Then, on Saturday, December 14, Thomas' counsel sent an email to the court and the attorneys, indicating that Thomas had need for urgent medical care and could not attend the December 16 hearing. Thomas followed with an email to his attorney, on which he copied the assistant for the district court judge and Katherine's lawyers, stating:

> "[T]he hearing scheduled to continue in Barbara James' case will need to be postponed: Thomas James is seeking medical care that has been characterized as urgent.
>
> "I, Thomas James, suggest scheduling a scheduling status conference consecutively with the status conference scheduled in January in [Thomas and Katherine's father's] estate;

"I, Thomas James, will not make further commitments in these cases until I have additional medical information.

"I do <u>Not</u> authorize continuing this matter in my absence."

The court took up this request at the December 16 hearing. At that hearing, Thomas' lawyer made an oral motion for a continuance, asking "that the Court consider that [Thomas] has a medical emergency and suspend the hearing and continue it until he could be present." Although Thomas' counsel stated that they could file a motion under K.S.A. 60-240, a review of the record has not revealed that any motion for a continuance was filed. Katherine opposed Thomas' request, noting his failure to file any motion and contending that Thomas did not have an absolute right to be present in a civil case, and he would suffer no prejudice if the hearing continued in his absence.

The court explained that it was not inclined to grant Thomas' request. Thomas' lawyer then responded:

"If I proceed, everything I do past the point of saying, 'I'm not allowed to proceed,' is unauthorized and he's going to fire me, fire the minute I start asking Katherine questions. So, I—I beg the Court's indulgence on this, on every note. I simply—I am fired if I try to go beyond his instructions. So, I really have no choices from that respect, and so we would ask the Court's indulgence that it is vital to him, to his ability to hear her testimony, and to be able to assist and participate in the case, Your Honor."

The court noted that there was no way to determine whether Thomas' medical condition would be ongoing, so it was unclear how long the hearing would need to be continued. And the district court found that Thomas' presence was not necessary to the proceeding because his lawyers were capable of cross-examining Katherine without him, and thus no prejudice would result from his absence. Moreover, Thomas had never indicated that he wished to testify, nor had he provided a proffer of his testimony to show

why the hearing should be postponed. The court ultimately denied Thomas' request for a continuance.

The fact remained, however, that Thomas absolutely forbade his attorney from conducting any portion of the hearing in his absence. Given Thomas' position, the court found that Thomas had "abandoned further opportunity to present additional evidence on the issue of the admission of the Will." The district court noted that "no good cause had been stated to justify [Thomas'] directive that his counsel had no authority to proceed without him," and that there was no "valid reason . . . as to why counsel could not at least conduct the examination of Katherine." The court thus found that the presentation of evidence was closed and the evidence submitted, and it ordered the parties to submit suggested findings of fact and conclusions of law.

A district court has broad discretion under Kansas law to manage and schedule the cases before it. See *Miller v. Glacier Development Co.*, 284 Kan. 476, 493-94, 161 P.3d 730 (2007), *cert. denied* 552 U.S. 1258 (2008). Consistent with this authority, K.S.A. 2020 Supp. 60-240(b) allows a district court "[f]or good cause" to "continue an action at any stage of the proceedings on just terms." A district court considering a continuance request takes into account all the circumstances of the case, including the requesting party's good faith, his or her showing of diligence, and the lawsuit's timetable. *In re J.A.H.*, 285 Kan. 375, 385, 172 P.3d 1 (2007).

Appellate courts review a district court's determination that a request for a continuance was or was not supported by good cause for an abuse of discretion. *Miller*, 284 Kan. at 494. A district court abuses its discretion when it issues a ruling that is arbitrary, fanciful, or unreasonable or is based on an error of law or fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

The Kansas Supreme Court has cautioned that appellate courts "view with grave concern the denial of a continuance where the effect for all practical purposes deprives a party of his day in court." *Fouts v. Armstrong Commercial Laundry Distributing Co.*, 209 Kan. 59, 65, 495 P.2d 1390 (1972). But Thomas does not argue—or point to any authority showing—he had an absolute right to be present at the evidentiary hearing. The district court found that Thomas had not shown good cause for a continuance, particularly given the fact that his lawyer could continue to examine Katherine in his absence. The court noted that the lawyer had been prepared for—and was in the midst of—this examination on October 9, before the hearing stopped. The court also explained that Thomas had provided no reason why his presence was necessary for the case to continue. Under these circumstances, we do not find that the district court abused its discretion when it denied Thomas' continuance request.

Instead of asserting a right to be present at the hearing, Thomas argues that the district court's denial of his request for a continuance and the closure of evidence effectively denied him any opportunity to testify. He asserts that because of these rulings, he had no opportunity to "present his evidence regarding his mother's capacity, his relationship with his mother, and his observations of the control Katherine had over Barbara."

We note that Thomas provides no proffer, beyond this general statement, as to what his testimony would have been had the hearing been continued and his testimony permitted. When a party moves to continue a hearing based on the absence of a material witness, Kansas law requires that person to submit an affidavit or declaration explaining, among other things, "the substance of the witness' expected testimony." K.S.A. 2020 Supp. 60-240(c)(A)(ii); see K.S.A. 60-405 (requiring a meaningful proffer before excluded evidence may be reviewed on appeal). This proffer requirement not only makes it possible for the district court to evaluate whether a continuance is justified; it also allows an appellate court to analyze any prejudice from a denial of that request.

10

Our review of the record shows the district court was attempting to shepherd this case through the evidentiary process—a process that had lasted, for a number of reasons, for over a year. Thomas had not previously stated he would testify at a hearing, but instead indicated that his presentation of evidence would conclude after he finished the examination of Katherine. He did not indicate in his December 14 email that he wanted to testify. And he provided no explanation of what he would have testified about, if given an opportunity after the December 16 hearing. Under these circumstances, Thomas has not shown that the district court abused its discretion when it denied his request for a continuance of the December 16 hearing.

2. *The district court did not err when it admitted the 2015 will to direct the administration and distribution of Barbara's estate.*

Thomas next challenges the district court's substantive decision that the 2015 will controls the administration and distribution of Barbara's estate. He argues that this decision resulted from an erroneous evidentiary ruling and was based on factual findings unsupported by the record.

When a will or other testamentary document is contested, the person offering the instrument has the initial burden to make a prima-facie showing of its validity—that is, that the testator had testamentary capacity and that the execution of the will complied with the statutory formalities. See K.S.A. 59-606 (formalities for executing a will); *Cresto v. Cresto*, 302 Kan. 820, 831, 358 P.3d 831 (2015). Once this showing has been made, courts presume the will is valid. 302 Kan. at 831; *Ginter v. Ginter*, 79 Kan. 721, 738, 101 P. 634 (1909). "The contents of the proffered will need not please the court, the testator's relatives, or anyone else for that matter, so long as the statutory requirements are followed." *Cresto*, 302 Kan. at 831.

11

After this prima-facie showing has been made, the burden shifts to the person contesting the will to overcome this presumption—to prove by clear and convincing evidence why the will should not be enforced. See 302 Kan. at 831. Clear and convincing evidence is a quantum of proof showing the truth of the asserted facts is highly probable. *Becker v. Knoll*, 301 Kan. 274, Syl. ¶ 1, 343 P.3d 69 (2015).

With these principles in mind, we turn to each of Thomas' claims of error.

2.1. *The district court's finding that Barbara had testamentary capacity when she executed the 2015 will is supported by substantial competent evidence.*

In order for a testator to have capacity to execute a will, the testator must know and understand "the nature and extent of his or her property" at the time the will is executed. *In re Estate of Farr*, 274 Kan. 51, 64, 49 P.3d 415 (2002). The testator must also understand "the disposition he or she desires to make of it," appreciate "who his or her relatives are and who the natural objects of his or her bounty are," and "comprehend the nature of the claims of those he or she desires to include and exclude from participation in the property distribution." 274 Kan. at 64.

Whether testamentary capacity exists is a question of fact. Appellate courts generally review a district court's conclusion that a testator had capacity by examining if substantial competent evidence supports that finding, without comparing or reweighing the testimony. *In re Estate of Farr*, 274 Kan. at 64; *In re Estate of Perkins*, 210 Kan. 619, 626, 504 P.2d 564 (1972). Thomas argues the district court's finding that Barbara had testamentary capacity is not supported by substantial competent evidence.

At the evidentiary hearing, Hoy—Barbara's attorney—testified that Barbara understood what property was covered by her will, how she wanted it distributed, who her children were, what property she wanted them to receive, and how she wanted them to receive it upon her death. Hoy noted that Barbara "knew well what . . . she owned and

12

the size [and] the magnitude of her wealth." Hoy explained that Barbara "understood the significance of that, and the importance of making sure that her plans were accurately reflected in her testamentary documents." And Hoy stated that he asked Barbara a series of questions at her will-signing to ensure she had capacity to execute the instrument. Both witnesses to the will's execution also testified that they believed Barbara was competent to sign and understood her will. Based on this evidence, the district court concluded that Katherine made a prima-facie showing of Barbara's testamentary capacity, thus shifting the burden to Thomas to rebut it.

There is no question that the district court found Katherine established a prima facie case of testamentary capacity. Rather, the question we consider is whether the district court erred when it found Thomas failed to rebut that showing by clear and convincing evidence. See *In re Estate of Farr*, 274 Kan. at 58-59. Because appellate courts do not reweigh evidence, the district court's conclusion that Thomas failed to carry his burden of proof—often called a negative finding—will only be overturned on appeal if Thomas can show the district court arbitrarily disregarded undisputed evidence or relied upon some extrinsic consideration such as bias, passion, or prejudice to reach its decision. See *Cresto*, 302 Kan. at 845. He has not made this showing.

Thomas raises several concerns on appeal about the district court's finding of Barbara's capacity, but he primarily argues there was no evidence that Barbara understood the nature and extent of her property. But this assertion is belied by the testimony in the record, especially that of Hoy. And though Thomas argues Hoy's testimony was not credible, it is not the role of this court and its judges—who were not present to observe the witnesses' demeanor and testimony—to reweigh the district court's credibility assessments. There is substantial competent evidence in the record to support the district court's finding that Barbara had the requisite testamentary capacity when she executed the 2015 will.

13

2.2. *The district court did not err in finding the 2015 will was not the product of undue influence.*

Thomas also argued that the 2015 will resulted from Katherine's undue influence over her mother. The district court found Thomas had not proven this allegation. Although Katherine had a confidential relationship with Barbara, that fact alone did not give rise to a presumption of undue influence. And the evidence on the whole showed the 2015 will was the result of Barbara's free will, not her daughter's interference. Thomas challenges these findings on appeal.

Kansas courts have historically given great deference to a testator's intentions, as "the right to make a will includes the right to make it according to the testator's own desires." *Cresto*, 302 Kan. at 831. It is natural that a testator's intentions may be influenced by a number of factors and people. And not all influence is improper. But while some influence is permissible, it becomes improper when it overbears the will of the testator. The Kansas Supreme Court has thus defined undue influence as "'such coercion, compulsion or constraint that the testator's free agency is destroyed, and by overcoming his power of resistance, the testator is obliged to adopt the will of another rather than exercise his own.'" 302 Kan. at 832.

A person claiming undue influence must prove the evidence shows "'that [the person accused of undue influence] did exert it and did so control the actions of the testator that the instrument is not really the will of the testator.'" 302 Kan. at 832-33. In this case, that means that Thomas had to prove both "compulsion and a direct relationship between the compulsion and the testamentary act." 302 Kan. at 833. In other words, he had to show (1) undue influence by Katherine (2) that directly affected Barbara's decision to execute the 2015 will. 302 Kan. at 833.

A person contesting a will without direct evidence of undue influence may establish a presumption of undue influence by showing that "the person who is alleged to

have exerted undue influence was in a confidential and fiduciary relationship with the testator" and "there were 'suspicious circumstances' surrounding the making of the will." *In re Estate of Farr*, 274 Kan. at 70-71. If both showings are made by clear and convincing evidence, a presumption of undue influence arises, and the burden shifts back to the proponents of the will to rebut the presumption. 274 Kan. at 71. Kansas law has no exhaustive list of factors to examine whether suspicious circumstances call into question a testator's capacity and intent. "Rather, that determination must be made on a case-by-case basis"—"'[w]hat may appear as "suspicious" under one set of facts may be considered normal under another.'" *Cresto*, 302 Kan. at 835-36.

On appeal, Thomas does not argue that the district court applied an erroneous standard in evaluating his undue influence claim. Instead, he claims the court failed to consider the factual circumstances as a whole and should have found that Katherine was in a confidential relationship with Barbara and that suspicious circumstances existed that called into question whether the 2015 will reflected Barbara's wishes. Thomas lists a series of allegations that he believes should have led the district court to find suspicious circumstances existed, including:

- Barbara started seeing a new attorney and doctor around the time she drafted and executed the 2015 will, which Thomas equates to Katherine grooming her mother to influence a change in her will;

- Katherine took over as their father's guardian and conservator and allegedly lied about her role in caring for her father;

- Katherine allegedly communicated and coordinated the structuring of Barbara's will with Hoy and attended estate planning meetings; and

15

- Hoy allegedly has a substantial financial interest in the 2015 will being admitted to probate—in the form of his fee.

As the district court noted, Thomas' factual assertions and inferences *could* indicate that Katherine had a motive or an opportunity to exercise influence over Barbara, but they do not suggest any undue influence directly affected the testamentary act of preparing and drafting the 2015 will. Moreover, the district court considered all the evidence presented and then concluded that "no suspicious circumstances . . . justify the conclusion that Katherine overcame Barbara's will or decision-making process." And despite Thomas' claim that the district court ignored the evidence he presented and failed to view the evidence as a whole, the district court addressed his factual contentions in its memorandum decision.

While the court recognized that the speculative assertions Thomas set forth showed a "range of possible motives" for Katherine's actions, it reasoned that many of Thomas' allegations were unrelated to the creation and execution of the will and concluded the evidence did not "clearly and convincingly show . . . a nefarious purpose or overpowering imposition of will." In other words, the court examined the evidence Thomas presented but found it did not demonstrate suspicious circumstances that would give rise to a presumption of undue influence. Thomas does not claim the court arbitrarily disregarded evidence; he merely asks this court to reinterpret and reweigh the evidence. But that is not the role of an appellate court.

The district court observed that although evidence showed that Katherine appeared to be closer with Barbara than Thomas was, Barbara was "in command of her own affairs" and maintained "some level of privacy over her testamentary acts." While Katherine was involved in helping Barbara organize information so she could draft and execute the 2015 will, the court found Katherine's actions were innocuous and not atypical for a close mother-daughter relationship. Specifically, the court concluded,

16

"[n]either Katherine's actions in connection with her mother's preparation or execution of the Will nor the interactions between Katherine and her mother relating to the preparation or execution of the Will are suspicious." The court further pointed out that Katherine received no disproportionate benefit under the 2015 will—Katherine's proportionate share was identical to the share Thomas would receive, and less than would have been provided under Barbara's prior will.

The district court did not err when it found that Thomas had not proven any suspicious circumstances giving rise to a presumption of undue influence over Barbara.

2.3. *The district court did not abuse its discretion when it ruled that certain subjects were irrelevant and thus limited the scope of Hoy's testimony.*

In a similar vein, Thomas argues the district court abused its discretion when it ruled that certain subjects were irrelevant and thus could not be discussed during Thomas' examination of Barbara's former attorney.

In his attempt to show suspicious circumstances, Thomas asserted that Hoy—Barbara's attorney—had a conflict of interest, as he would be serving as the trustee of the testamentary trust created by the 2015 will and would be paid his fees and expenses from the trust corpus. Thomas argued that this role affected Hoy's credibility, as he stood to earn significant fees as the trustee of a sizable trust. Thomas also asserted that the fact that Barbara hired Hoy, who had previously represented Katherine, instead of working with Barbara's previous attorney was a suspicious circumstance that called into question whether the 2015 will resulted from Barbara's intentions or Katherine's influence.

During the evidentiary hearing, Thomas examined Hoy at length regarding his representation of Barbara. The district court allowed substantial leeway in these questions, but on three occasions the court limited Thomas' questioning. On each occasion, the district court asked how Hoy's future role with the trust demonstrated that

17

Katherine had exerted undue influence over her mother. Thomas was unable to make that connection to the district court's satisfaction.

On the first occasion, Thomas' attorney questioned Hoy about the fee he could potentially receive as trustee. In doing so, the attorney provided Hoy with a spreadsheet she had created calculating potential trustee fees based on hypothetical rates of return for the trust's investments. Thomas asserted this information tended to show Hoy was biased against Thomas because he stood to receive an unreasonable fee if the 2015 will were admitted. At the same time, however, Thomas clarified he was not asserting that Hoy exerted any undue influence over his mother or that he had conspired with Katherine to do so—he only asserted undue influence by Katherine. The court limited this line of questioning, finding no probative value in speculating about fees Hoy might receive when the testamentary documents clearly defined his role as trustee and his fees for serving in that capacity.

On the second occasion, Thomas' attorney attempted to question Hoy about whether he should have informed Barbara about seeking independent legal counsel before naming him as trustee. Thomas argued that without independent legal counsel, there could be no finding that Barbara had testamentary capacity to execute the 2015 will. The court disallowed this line of questioning, reasoning it was not relevant to the question of whether Barbara had testamentary capacity. The court explained that it had already allowed some discussion on that point and had admitted into evidence a letter from Hoy to Barbara, from which Thomas could argue his position.

Shortly thereafter, Thomas' attorney again attempted to question Hoy on whether he had any obligation to counsel Barbara to seek independent legal advice. On this third occasion, the district court once more reiterated its ruling that Thomas had not shown a logical connection between the subject of the questions and Barbara's testamentary capacity or Thomas' claim of undue influence.

18

As a preliminary matter, Katherine argues that Thomas did not include a sufficient proffer of what Hoy's testimony would be on this subject to preserve this question for appeal. See K.S.A. 60-405. As a general rule, a party's "[f]ailure to make a proffer of excluded evidence precludes appellate review because there is no basis to consider whether the trial court abused its discretion." *State v. Evans*, 275 Kan. 95, 100, 62 P.3d 220 (2003). But when the record provides grounds for this court to examine the substance of the excluded testimony, this court may consider whether the district court abused its discretion even in the absence of such a proffer. Here, Thomas did not make a proffer of the substance of the testimony he attempted to elicit from Hoy, but his discussions with the district court reveal the substance of the excluded testimony. We thus find the record sufficient to assess the court's rulings.

"'All relevant evidence is admissible unless it is prohibited by statute, constitutional provision, or court decision.'" *Nauheim v. City of Topeka*, 309 Kan. 145, 153, 432 P.3d 647 (2019). Evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b). "To establish relevance, there must be some material or logical connection between the asserted facts and the inference or result they are intended to establish." *State v. Gunby*, 282 Kan. 39, 47, 144 P.3d 647 (2006). Whether evidence is material is a question of law, but the probative value of that evidence is a matter entrusted to the sound discretion of the district court. See *State v. Reid*, 286 Kan. 494, 509, 186 P.3d 713 (2008).

On appeal, Thomas relies on *Cresto* to argue that anyone—including an attorney—may exercise undue influence over a testator and thus invalidate a testamentary instrument. And he asserts that *Cresto* shows that an attorney's conflict of interest may be a suspicious circumstance that gives rise to a presumption of undue influence. While this is true in a general sense, the facts that gave rise to the Kansas Supreme Court's decision in *Cresto* are distinguishable from the facts of this case in a number of important ways.

19

The will at issue in *Cresto* was suspicious in that it disinherited the testator's children and established a "family-like" relationship with the beneficiaries of the estate. 302 Kan. at 839. The attorney who drafted this will eventually married the daughter of one of the beneficiaries, thus receiving a direct benefit by drafting "specific provisions for her significant other to inherit under those documents under certain circumstances." 302 Kan. at 839. The Kansas Supreme Court found that this combination of facts— leaving no provision for the testator's children and instead leaving the estate to a beneficiary who married the testator's attorney—were sufficiently suspicious to give rise to a rebuttable presumption of undue influence on the attorney's part. 302 Kan. at 840-41.

The conflict Thomas argues with respect to Hoy is substantially different.

- Thomas asserted that Hoy had a financial incentive to have the 2015 will admitted, as it would allow him to serve as trustee. But as the district court indicated, there was ample evidence offered from which Thomas could—and did—argue this point. The fact that he was not permitted to engage in speculative questioning about the potential fees Hoy might receive did not limit his ability to argue this point. And unlike *Cresto*, where the attorney ended up marrying a beneficiary of the will, Thomas was not able to show that Hoy's future fees as trustee were in any way related to the question of whether Katherine exerted undue influence over her mother or whether Barbara lacked capacity to execute the will.

- Thomas argued that Hoy's testimony was relevant to show that Katherine wanted Barbara to set up her estate in a way that prevented Thomas from "having full access to his money and setting it up as a charitable remainder trust." But the court found the amount Hoy might earn while serving as trustee of the testamentary trust was not relevant to showing any suspicious circumstances that would call Katherine's motives into question.

20

- Thomas argued that Hoy should have counseled Barbara of her right to seek independent legal advice as to whether Hoy should also serve as trustee. But as the district court pointed out, whether Barbara should have sought the advice of other counsel was not relevant to the question before it—whether Barbara had testamentary capacity to execute the 2015 will.

Nor has Thomas demonstrated how this testimony would have changed the outcome of the hearing. See K.S.A. 2020 Supp. 60-261. The district court permitted Thomas' counsel to establish that Hoy would serve as trustee and what his rates were under the estate plan under the 2015 will; it simply stopped the questioning after it devolved into speculative argument. Thomas likewise had the opportunity to argue the question of whether Hoy should have counseled Barbara to seek outside legal advice; the district court merely limited Thomas' attorney's ability to examine Hoy on the extent of his ethical duties while he was on the witness stand.

Under these circumstances, the district court did not err when it concluded these matters—speculation on Hoy's future fees and questions as to whether Hoy counseled Barbara to consult an independent lawyer before appointing him as trustee—were not relevant to show whether Katherine exerted undue influence.

2.4. *The district court did not abuse its discretion by appointing Katherine as the executor of the estate.*

Finally, Thomas argues the district court abused its discretion by appointing Katherine as executor of Barbara's estate—in accordance with the designation in the 2015 will—because she is unsuitable to fulfill the required duties and cannot ensure the estate will be administered in a just and efficient manner.

21

This court reviews a district court's decision to appoint a particular person as executor of an estate for an abuse of discretion. *In re Estate of Petty*, 227 Kan. 697, 707, 608 P.2d 987 (1980). Generally, when a testator names an executor in his or her will, the district court has no discretion in appointing that person so long as the executor named is legally competent and will accept the position. 227 Kan. at 707. But when "peculiar and abnormal facts are disclosed which make it clear that the person designated as an executor is not a suitable person," the district court should decline to appoint the chosen executor. 227 Kan. at 707; see also *In re Estate of Adams*, 237 Kan. 556, 558, 701 P.2d 965 (1985) ("[T]he rule is that the testator's choice of executor shall control, except in cases of legal incompetence or where there are peculiar and abnormal circumstances showing the executor nominated in the will is unsuitable for the position of trust."). Where the person named as executor is unsuitable, the administration of the estate should be undertaken by a special administrator. *In re Estate of Petty*, 227 Kan. at 707.

A person designated as an executor who "has acted in a manner antagonistic toward the interests of the estate or the heirs in a way indicating that his administration of the estate would probably result in prolonged and unnecessary difficulty or expense" should not be appointed. 227 Kan. at 707. Yet "the mere fact the heirs of the testator have a feeling of hostility toward the designated executor and do not want him appointed is not alone a sufficient reason for a district court to refuse to appoint the designated person." 227 Kan. at 707.

Barbara named Katherine as the executor in both her 2015 and 1998 wills. The district court found that Katherine was willing, able, and qualified to serve as executor. Contrary to Thomas' assertions on appeal, the court's decision to appoint Katherine as executor was based not only on Barbara's expressed desire through her 2015 will, but also the approval of several relatives, who spoke highly of Katherine's organizational skills and competence. And the court found that Katherine's professional experiences and her

22

personal experiences in filing Barbara's taxes before her death left Katherine suited to serving in this capacity.

It is clear from the proceedings in this case that Thomas and Katherine have a hostile and distrustful relationship. But this fact alone was not a sufficient reason for the district court to refuse to enforce Barbara's wishes as stated in her will. The district court did not abuse its discretion when it appointed Katherine executor of Barbara's estate.

After carefully reviewing the extensive record before us, we conclude that Thomas has not apprised us of any error by the district court. We thus affirm the court's thoughtful and well-reasoned opinion.

KATHERINE'S REQUEST FOR ATTORNEY FEES

Katherine asks this court to award her attorney fees and costs for services on appeal in the amount of $66,851 in fees and $59.50 in costs. She primarily argues that these fees should be paid by Thomas or Thomas' former counsel, claiming the issues Thomas raises in his appeal are frivolous and "based on a multitude of misstated facts and misplaced legal arguments." See K.S.A. 2020 Supp. 60-211(c) (allowing attorney fees as sanctions for arguments asserted for no purpose other than to harass, cause unnecessary delay, or increase the cost of litigation). In the alternative, Katherine argues that her attorney fees should be paid by Barbara's estate under K.S.A. 59-1504.

This court may award attorney fees for services rendered during an appeal if the district court had authority to award attorney fees. Supreme Court Rule 7.07(b)(1) (2021 Kan. S. Ct. R. 51). There is no question that K.S.A. 59-1504 authorizes the award of attorney fees from an estate when someone succeeds in having a will admitted over another person's protest, as Katherine did here. Nor do the parties argue that the amount of attorney fees Katherine has requested is unreasonable, given the rates Katherine's

attorneys charged, the complexity of the case, and the numerous issues that had to be addressed on appeal. See Kansas Rule of Professional Conduct (KRPC) 1.5(a) (2021 Kan. S. Ct. R. 327).

Instead, the crux of the issue before us is whether Katherine's attorney fees should be paid by Barbara's estate under K.S.A. 59-1504 or by Thomas or his attorneys under K.S.A. 59-2214. K.S.A. 59-2214 requires a district court to tax the costs of probate against the estate "unless it appears that it would be unjust and inequitable to do so, in which event the court shall tax such costs . . . against such party as it appears to the court is just and equitable." Our Supreme Court has addressed the interplay between K.S.A. 59-1504 and K.S.A. 59-2214, noting that "the general provision in K.S.A. 59-2214 concerning the payment of probate costs is trumped [in attorney-fee litigation] by the specific provision in K.S.A. 59-1504 that mandates when and how attorney fees are to be paid." *In re Estate of Strader*, 301 Kan. 50, 61, 339 P.3d 769 (2014). Thus, K.S.A. 59-2214 does not control Katherine's attorney-fee request.

And though Thomas' appeal has not succeeded on its merits, we do not agree with Katherine's assertions that his claims were frivolous or that his appeal was taken solely for the purpose of harassment or delay. See K.S.A. 2020 Supp. 60-211(c). Thomas (through his attorneys) raised important legal questions regarding the district court's evidentiary rulings and factual findings. The fact that we have not resolved these questions in his favor does not undermine his right to seek review of the district court's judgment.

We find that Katherine's request for $66,851 in appellate attorney fees are reasonable and that these fees should be paid by Barbara's estate under K.S.A. 59-1504. Costs are to be assessed in accordance with the appellate mandate.

24

Katherine has also requested significant attorney fees and costs in association with the litigation before the district court. Katherine previously filed a motion with the district court for those fees, and that motion remains pending during this appeal. We conclude that the district court, not the appellate court, is in the best position to assess what fees were reasonable during the proceedings before it and who is responsible for their payment. We therefore decline to rule on the remainder of Katherine's request for attorney fees and remand the case to the district court to resolve the pending fee request.

Affirmed and remanded.